# United States Court of Appeals for the Fifth Circuit

---

No. 23-50541

---

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2025

Lyle W. Cayce
Clerk

MICHELLE EVANS,

*Plaintiff—Appellant,*

*versus*

JOSÉ GARZA, *in his official capacity as Travis County District Attorney,*

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-727

---

Before RICHMAN, OLDHAM, and RAMIREZ, *Circuit Judges.*

PRISCILLA RICHMAN, *Circuit Judge*:

During a debate by lawmakers at the Texas Capitol in 2023, Michelle Evans tweeted[1] a photograph of a transgender (biologically male) politician washing their hands in the women's restroom. Evans surrendered her cell phone to police after she learned the Travis County District Attorney, José Garza, was investigating whether her tweet violated Texas Penal Code § 21.15(b). Evans sought a temporary restraining order and preliminary

---

[1] Although Twitter has since rebranded as "X" and a "tweet" is now known as a post, we use the relevant monikers at the time of the underlying events in this case.

injunction prohibiting Garza from investigating or prosecuting her based on the photograph. She argued Texas Penal Code § 21.15(b)(2)-(3) is unconstitutional on its face and as applied to her past and future publication of the photograph. The district court denied Evans's motions. We affirm the denial of a preliminary injunction.

# I

In May 2023, Evans attended a debate in the Texas House of Representatives at the Texas Capitol about gender reassignment treatment for children. When she visited the women's restroom, Evans encountered a transgender (biologically male) politician whom she later confronted. After returning to her seat in the Capitol gallery, one of Evans's seatmates showed her that someone from their group had posted a photo of the politician washing their hands in the women's restroom on Facebook. Evans tweeted the photo with a caption indicating she believed the politician should not have used the women's restroom.

Evans's tweet generated a controversy, leading the Department of Public Safety (DPS) to question her. She surrendered her phone to DPS, which launched an investigation—at the request of Travis County District Attorney José Garza—into whether Evans violated Texas Penal Code § 21.15(b). This statute criminalized—as a state jail felony[2]—transmitting "a visual image of another in a bathroom or changing room" or promoting such a transmission if the action is done without consent and "with intent to invade the privacy of the other person."[3] The statute was recently amended

---

[2] *See* Tex. Penal Code § 12.35.

[3] Act of May 17, 2001, 77th Leg., R.S., ch. 458, § 1, 2001 Tex. Gen. Laws 893, *amended by* Act of May 16, 2025, 89th Leg., R.S., H.B. 1465, § 3 (to be codified as an amendment to Tex. Penal Code § 21.15(b)).

No. 23-50541

in 2025, and we set forth in a footnote the relevant provisions that were in effect at the time of Evans's tweet,[4] as well as the amended portion.[5] While Evans alleges Garza is deciding whether to charge her, no criminal proceeding is currently underway.

Evans sought a temporary restraining order and preliminary injunction in federal court prohibiting Garza from investigating or prosecuting her based on disseminating the photograph. She argued Texas

---

[4] *Id.*, providing:

> (b) A person commits an offense if, without the other person's consent and with intent to invade the privacy of the other person, the person:

> * * *

> (2) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another in a bathroom or changing room; or

> (3) knowing the character and content of the photograph, recording, broadcast, or transmission, promotes a photograph, recording, broadcast, or transmission described by Subdivision (1) or (2).

[5] Act of May 16, 2025, 89th Leg., R.S., H.B. 1465, § 3 (to be codified as an amendment to TEX. PENAL CODE § 21.15(b)) (emphasis added), which states:

> (b) A person commits an offense if, without the other person's consent and with intent to invade the privacy of the other person, the person:

> * * *

> (2) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image *of another person in a place in which a person has a reasonable expectation of privacy;* or

> (3) knowing the character and content of the photograph, recording, broadcast, or transmission, promotes a photograph, recording, broadcast, or transmission described by Subdivision (1) or (2).

No. 23-50541

Penal Code § 21.15(b)(2)-(3) is unconstitutional on its face and as applied to her past and future publication of the photograph based on her First and Fourteenth Amendment rights. The district court denied Evans's motions for injunctive relief. Evans timely appealed the denial of a preliminary injunction.

## II

We begin by addressing two threshold issues: standing and the applicability of *Younger*[6] abstention.[7]

First, Travis County argues Evans does not have standing. We are satisfied that she does. Her injury is a threat of future prosecution that is fairly traceable to the Travis County District Attorney.[8] That injury could be redressed by the preliminary injunctive relief she seeks.

Second, Evans contends that the district court erred in applying *Younger* abstention to this case, and she takes issue with the principles of federalism underlying the district court's balancing of the equities in analyzing the preliminary injunction. The district court considered applying *Younger* abstention as a reason to "refrain from considering" Evans's request for injunctive relief.[9] Ultimately, the district court stated, "Here, it is unclear whether a grand jury has been impaneled, and thus whether *Younger* abstention definitively applies. But this is a motion for emergency equitable

---

[6] *Younger v. Harris*, 401 U.S. 37 (1971).

[7] *See Daves v. Dallas County*, 22 F.4th 522, 531-32 (5th Cir. 2022) (en banc) (characterizing *Younger* abstention as a "threshold question[]" even though it is "not a jurisdictional issue").

[8] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("Finally, the threat of future enforcement of the false statement statute is substantial.").

[9] ROA.47 (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing *Younger*, 401 U.S. 37)).

relief, and the same values that underly *Younger* apply to the balance of equities and public interest prongs under Rule 65,"[10] the rule governing preliminary injunctions and temporary restraining orders.[11]  The district court then discussed considerations of equity and the public interest in the context of explaining its denial of the preliminary injunction.  In short, the district court did not apply *Younger* abstention.

"Although we review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied."[12]  Our court uses a three-part test for determining whether *Younger* abstention applies.  We ask whether "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'"[13]  Although the district court stated that it is "unclear whether there is an ongoing judicial proceeding," DPS's contact with Evans likely does not qualify.  As the Seventh Circuit has explained, "a federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun."[14]  The First Circuit has also held that proceedings had not commenced when the plaintiffs were notified they were being investigated,

---

[10] ROA.48 (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant or deny a preliminary injunction is discretionary with the district court.")).

[11] *See* Fed. R. Civ. P. 65.

[12] *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm., of State Bar of Tex.*, 283 F.3d 650, 652 (5th Cir. 2002).

[13] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

[14] *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014).

but no formal charges had been brought.[15]  In the case presently before us, there were no formal charges against Evans.  So, we will not apply *Younger* abstention.

## III

A preliminary injunction is "an extraordinary remedy never awarded as of right."[16]  The factors governing a preliminary injunction are as follows:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[17]

The dissenting opinion suggests the district court erred in considering the values underlying *Younger* in its preliminary injunction analysis, and accordingly improperly commingled the two analyses.[18]  However, we review the grant or denial of a preliminary injunction for abuse of discretion,[19] "with any underlying legal determinations reviewed de novo and factual findings for clear error."[20]  Even if the district court considered "the values underlying *Younger*" when it should not have done so, that would not mean

---

[15] *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 520 (1st Cir. 2009).

[16] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[17] *Concerned Women for Am., Inc. v. Lafayette County*, 883 F.2d 32, 34 (5th Cir. 1989).

[18] *Post* at 17-18.

[19] *Meyers v. Moody*, 723 F.2d 388, 389 (5th Cir. 1984) ("The granting of a preliminary injunction rests in the sound discretion of the district court, and will be overturned only on a showing of abuse of that discretion.").

[20] *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021) (italics omitted).

that Evans is entitled to injunctive relief. The "burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff."[21] We examine those factors in light of the record in this case.

## A

The third and fourth factors "merge when the Government is the opposing party."[22] If an injunction were granted, there would be harm to Travis County and the public interest. Travis County has a strong interest in enforcing Texas's criminal statutes. To this point, our court previously declared: "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."[23]

As to the harm to Evans, it is not clear that she will be prosecuted. Evans sued the Travis County District Attorney's Office only forty-six days after the incident at the Capitol underlying this suit. The District Attorney's Office then "paused its evaluation of potential criminal charges during the pendency of Plaintiff's lawsuit and the potential judicial determination as to the constitutionality of the applicable criminal statute." That said, the threat of prosecution hangs over her and likely inhibits her further dissemination of the image at the center of this controversy. Even if this constitutes

---

[21] *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

[22] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[23] *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017); *see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (REHNQUIST, J., in chambers) ("It also seems to me that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

No. 23-50541

irreparable harm, however, irreparable harm is not, in and of itself, sufficient to support the grant of a preliminary injunction.[24]

## B

The district court did not address the likelihood of success on the merits in its written order.[25] We note that in 2014, the Texas Court of Criminal Appeals held that part of a prior version of Texas Penal Code § 21.15(b)(1) was facially unconstitutional.[26] The Texas court noted that part of that subsection "makes it a crime to, among other things, photograph or record by electronic means a visual image of another person under certain circumstances," if "the person being photographed or recorded is not in a bathroom or private dressing room."[27]

The present case involves subsection (b)(2), not (b)(1), of the statute in effect on the date of the incident.[28] Subsection (b)(2) is limited to images "of another in a bathroom or changing room."[29] It is highly unlikely that this law is facially invalid. Evans argues that the statute is overbroad, but "[t]he overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as

---

[24] *See, e.g.*, *Nken*, 556 U.S. at 427 ("A stay . . . 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'") (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[25] *Cf. McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021) (considering the preliminary injunction factors in the first instance).

[26] *Ex parte Thompson*, 442 S.W.3d 325, 330 & n.3 (Tex. Crim. App. 2014).

[27] *Id.* at 330.

[28] *See Supra* Section I and notes 4-5.

[29] Act of May 17, 2001, 77th Leg., R.S., ch. 458, § 1, 2001 Tex. Gen. Laws 893, *amended by* Act of May 16, 2025, 89th Leg., R.S., H.B. 1465, § 3 (to be codified as an amendment to Tex. Penal Code § 21.15(b)).

a last resort.'"[30] Evans must "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally."[31]

By contrast, circumstances in which a prosecution under that subsection would likely be constitutional readily come to mind. For example, it is highly unlikely, to say the least, that there is a First Amendment right to distribute, without their consent, images of a person's genitalia or other anatomy (whether they be an adult, infant, pre-teen, teen) while utilizing bathroom facilities. It is also far from clear that there is a First Amendment right to capture and distribute an image, without their permission, of a fully clothed adult while in a public bathroom. Think of a celebrity, for example, who ducks into a women's bathroom to avoid paparazzi or overzealous fans. What if the celebrity were in the restroom simply to relieve and refresh themselves? Is there a constitutional right to follow and photograph that person in a restroom when they are seeking privacy? Is any citizen, celebrity or not, fair game for photos or videos while in a restroom? Does the fact that a person is an elected official change that equation? The law is certainly not clear that politicians may be pursued, even in a public restroom, for the purpose of obtaining and publicizing their image.

Evans maintains that when the subject of the photograph is "not in a private area of the bathroom and knows they are subject to public view," specifically, when they are "fully clothed, at a sink, washing their hands," others in the restroom have a First Amendment right to photograph the subject, and Evans has a First Amendment right to distribute that

---

[30] *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

[31] *Id.*

photograph.  But we cannot say it is likely that the statute, as it existed at the time of the incident, is unconstitutional as applied to Evans.  In *Ex parte Metzger*,[32] a Texas court of appeals held that § 21.15(b) constitutes a content-based regulation of protected speech.[33]  Therefore, it must survive strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[34]  The court in *Metzger* further concluded that the statute protects compelling government interests because "the rights to personal seclusion, bodily integrity, and sexual privacy are substantial rights; and the state has a compelling interest in protecting those rights from highly offensive or 'intolerable' attack."[35]  We agree with *Metzger* on this point.  The statute's heightened intent requirement ensures that the statute is narrowly tailored to achieve that compelling interest.  A defendant only violates the statute if they act "with intent to invade the privacy of [an]other person" when photographing or videotaping another person, or promoting such recorded content of that other person.[36]  The court in *Metzger* "construed the intent-to-invade-privacy element" such that "the statutory restriction is limited to 'intolerable' invasions because it reaches only photographs and transmissions that either in the manner of their creation or their subject matter would be considered highly offensive to a reasonable person of

---

[32] 610 S.W.3d 86 (Tex. App.—San Antonio 2020, pet. ref'd).

[33] *Id.* at 95, 97.

[34] *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (internal quotation marks omitted) (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)).

[35] 610 S.W.3d at 104.

[36] Act of May 17, 2001, 77th Leg., R.S., ch. 458, § 1, 2001 Tex. Gen. Laws 893, *amended by* Act of May 16, 2025, 89th Leg., R.S., H.B. 1465, § 3 (to be codified as an amendment to Tex. Penal Code § 21.15(b)).

ordinary sensibilities."[37]  For Evans to be convicted, then, the prosecution would have to prove that she acted with this culpable mental state—a high bar that will prevent conviction when no subject matter or manner of creation "highly offensive to a reasonable person of ordinary sensibilities" is involved.

Evans contends that this mental state "adds nothing to the statute" or is otherwise unconstitutionally vague but cites no case in which a Texas court has declined or neglected to probe a defendant's intent.  Given her failure to account for the clarity with which three Texas appeals courts have construed the intent element,[38] Evans has not "clearly carried the burden of persuasion" in showing that she has a substantial likelihood of prevailing on the merits of her as-applied challenge.[39]

Evans did not meet her burden.[40]  On the record before us, we cannot conclude that the district court abused its discretion in denying the preliminary injunction.

---

[37] *Metzger*, 610 S.W.3d at 105; *see also id.* at 102; *Krenzer v. State*, No. 05-21-00444-CR, 2022 WL 17423464, at *3 (Tex. App.—Dallas Dec. 6, 2022, pet ref'd) (mem. op., not designated for publication) (adopting *Metzger*'s construction of the intent element); *Morgan v. State*, No. 07-22-00300-CR, 2023 WL 6976919, at *4 (Tex. App.—Amarillo Oct. 23, 2023, pet. ref'd) (mem. op., not designated for publication) (adopting *Metzger*'s construction of the intent element).

[38] *Metzger*, 610 S.W.3d at 102, 105 (construing the intent-to-invade privacy element); *Krenzer*, 2022 WL 17423464, at *3; *Morgan*, 2023 WL 6976919, at *4.

[39] *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("A preliminary injunction is an extraordinary remedy.  It should only be granted if the movant has clearly carried the burden of persuasion on all four [] prerequisites.").

[40] *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) ("The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff.").

No. 23-50541

*       *       *

For the foregoing reasons, the district court's judgment is
AFFIRMED.

No. 23-50541

Andrew S. Oldham, *Circuit Judge*, dissenting:

Michelle Evans retweeted a picture of a fully clothed man washing his hands in the women's bathroom at the Texas State Capitol. For that purported sin, Travis County District Attorney Jose Garza opened a criminal investigation and threatened to bring the awesome weight of the County's prosecutorial machinery down on Ms. Evans. The district court denied Evans' motion for a preliminary injunction based on its erroneous application of *Younger* abstention. The majority *agrees* with me that *Younger* does not apply—but then somehow affirms anyway. I respectfully dissent.

This opinion proceeds in three parts. Part I considers the history of federal injunctions against state court proceedings, both before and after *Younger*. Part II explains that *Younger* plainly does not apply to this case. Part III concludes that the district court should grant injunctive relief to Evans.

I

For nearly as long as Congress has provided for inferior federal courts, it has set limits on their injunctive authority. Four years after the first Judiciary Act, Congress passed the Anti-Injunction Act of 1793. *See* Act of Mar. 2, 1793, ch. 22, § 5, 1 Stat. 333. As originally written, the AIA provided that no "writ of injunction [shall] be granted to stay proceedings in any court of a state." *Ibid*. The text of the 1793 AIA was "unqualified." *Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 132 (1941). And it "expresse[d] the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process." *Id.* at 135; *see also Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9 (1940); William Baude, et al., Hart & Wechsler's The Federal Courts and the Federal System 1370–72 (8th ed. 2025).

No. 23-50541

The historical foundation of the AIA is hotly debated. *Compare* Charles Warren, *Federal and State Court Interference*, 43 Harv. L. Rev. 345, 347 (1930), *with* James Pfander & Nassim Nazemi, *The Anti-Injunction Act and the Problem of Federal-State Relations*, 92 Tex. L. Rev. 1, 10–40 (2013); *see also Mitchum v. Foster*, 407 U.S. 225, 232 (1972) ("The precise origins of the legislation are shrouded in obscurity."). So too is the wisdom of each expansion, contraction, judicial interpretation, and congressional amendment of the AIA's text over the last 232 years. *See* Pfander & Nazemi, 92 Tex. L. Rev. at 41–71; Warren, 43 Harv. L. Rev. at 367; Telford Taylor & Everett I. Willis, *The Power of Federal Courts to Enjoin Proceedings in State Courts*, 42 Yale L.J. 1169, 1172 (1933); William T. Mayton, *Ersatz Federalism Under the Anti-Injunction Statute*, 78 Colum. L. Rev. 330, 332-38 (1978); Comment, *Federal Court Stays of State Court Proceedings: A Re-Examination of Original Congressional Intent*, 38 U. Chi. L. Rev. 612, 613 (1971). All this history, the countervailing pushes and pulls on the desirability of federal injunctions during different historical periods, and the apparent contradiction in various Supreme Court opinions interpreting the AIA have made ample fodder for academics, law reviews, and Fed Courts exams.

For present purposes, however, the legal background is relatively simple. Start, as always, with the relevant statutory text. Since 1948, the AIA has provided: "A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, Congress has generally prohibited injunctions against state court proceedings—with three enumerated statutory exceptions.

Against the text of that statute, consider *Younger v. Harris*, 401 U.S. 37 (1971). That case concerned a federal suit by John Harris, Jr., who claimed that the California Criminal Syndicalism Act violated his First Amendment

No. 23-50541

right to freedom of speech. *Id.* at 38–39. The problem? Harris had already been indicted in state court, and he wanted an injunction against those pending state proceedings. Such an injunction would flatly violate the AIA, so the Supreme Court refused it. In explaining that judgment, Justice Black's opinion said much about the "longstanding public policy against federal court interference with state court proceedings." *Id.* at 43. And Justice Black extolled the principles of "Our Federalism," which he grounded in the AIA. *Id.* at 49. And at the end of the day, "the AIA addressed the problem in *Younger* in fairly clear terms": Harris wanted a federal injunction against pending state proceedings, but Congress had plainly prohibited that relief. Pfander & Nazemi, 92 Tex. L. Rev. at 60.

The very next year came *Mitchum v. Foster*. In that case, the Court considered the first statutory exception to the AIA: injunctions "expressly authorized by Act of Congress." The Court held a statute satisfies AIA Exception 1 if it creates a "right or remedy enforceable in a federal court of equity, [that] could be given its intended scope only by the stay of a state court proceeding." 407 U.S. at 237–38. The Court then held that 42 U.S.C. § 1983 constitutes one such express exception to the AIA. Thus, ever since *Mitchum*, § 1983 suits have authorized federal courts to enter appropriate injunctions against state court proceedings.[1]

---

[1] *Younger*—like *Mitchum*—was a § 1983 suit. So you might reasonably wonder why the *Younger* Court denied injunctive relief under "Our Federalism" just one year before the Court held that such injunctions were "expressly authorized" under the AIA. The answer is complicated and, as with all things arising out of the AIA, hotly debated. *See, e.g.*, Pfander & Nazemi, 92 Tex. L. Rev. at 46 (describing the "awkward *pas de deux* of *Mitchum* and *Younger*, in which the Court both championed the centrality of federal equitable intervention to enforce Reconstruction and imposed significant restrictions on such intervention in the name of federalism"); Paul M. Bator, *The State Courts and Federal Constitutional Litigation*, 22 Wm. & Mary L. Rev. 605, 620 (1981); Richard H. Fallon, Jr., *The Ideologies of Federal Courts Law*, 74 Va. L. Rev. 1141, 1164–72 (1988).

No. 23-50541

## II

I (A) explain that neither the AIA nor *Younger* bars Evans's request for federal injunctive relief under § 1983. Then I (B) address the district court's puzzling decision to apply *Younger* anyway.

## A

This case is an easy, straightforward application of *Mitchum* and the "expressly authorized" exception to the AIA. Evans brought suit under § 1983. Section 1983 expressly authorizes injunctions like the one Evans requests. *Mitchum*, 407 U.S. at 244. Therefore, the AIA does nothing to bar to her requested relief.

Neither does *Younger*. That's because there is no *pending* state court proceeding against Ms. Evans. *See Younger*, 401 U.S. at 43 (refusing injunction only where state court proceedings are *already pending*). So, assuming she otherwise meets the requirement for an injunction, Evans is entitled to federal relief just like every other similarly situated plaintiff since *Ex parte Young*, 209 U.S. 123 (1908). *See id.* at 161–62 ("When . . . an alleged unconstitutional statute [] is the subject-matter of inquiry in a suit already pending in a Federal court, the [federal] court . . . has the right . . . to hold and maintain such jurisdiction, to the exclusion of all other courts."); *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 239 (1984) (holding *Younger* does not apply until state court proceedings are initiated).

The Court has been especially solicitous of First Amendment plaintiffs who need injunctions to protect their speech rights. That was true before *Younger*. *See Dombrowski v. Pfister*, 380 U.S. 479, 488–90 (1965). And it has remained true after *Younger*. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975); *Wooley v. Maynard*, 430 U.S. 705, 711 (1977). In this case, Evans wants to continue publishing the purportedly illegal photo *in the future*, as part of her advocacy on transgender issues. *See* ROA.8 (complaint); ROA.36

(motion for TRO and preliminary injunction); Blue Br. at 2, 7, 10. Neither *Younger* nor the AIA prohibits a federal court from protecting Evans's First Amendment rights to engage in this debate.

## B

The majority does not disagree. *See ante*, at 6 ("[W]e will not apply *Younger* abstention."). So why does it rule against Evans? The majority says "the district court did not apply *Younger* abstention" but instead applied the values *underlying Younger* as part of its preliminary-injunction analysis. *Id.* at 4–5. And without commenting on that troublesome proposition, the majority reaches the same result the district court did. That is wrong coming and going.

*First*, the district court expressly invoked *Younger* and then held that it applies to criminal *investigations*—even in the absence of pending state court *proceedings*. *See, e.g.*, *Evans v. Garza*, No. 1:23-CV-727-RP, 2023 WL 4879906 *3 (W.D. Tex. June 30, 2023) ("The express purpose of this lawsuit, regardless of whether it should be dismissed under *Younger*, is to interfere with an ongoing state criminal *investigation*." (emphasis added)); *ibid.* ("Forcing Garza to halt a state criminal *investigation* immediately would plainly offend principles of federalism." (emphasis added)). The district court offered zero authority for the proposition that *Younger* prohibits injunctive relief whenever the DA's office commences an investigation. And our precedent forecloses the point. *See, e.g.*, *Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016).

*Second*, the majority cannot quarantine the district court's tainted *Younger* analysis from its preliminary-injunction analysis. The district court clearly and erroneously stated that "the same values that underly *Younger* apply to the balance of equities and public interest prongs under Rule 65." *Evans*, 2023 WL 4879906, at *3. And the majority suggests it's OK to

comingle *Younger* and the preliminary-injunction factors in this way by affirming. *See ante*, at 7 (repeating the district court's federalism concerns as a valid consideration under the public-interest PI factor).

In my view, it makes no sense to concede that *Younger* and the AIA do not apply to Evans's suit, but then turn around and apply *Younger* and the AIA as factors three and four of the traditional preliminary-injunction standard. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (discussing the traditional four-factor test: (1) likelihood of success on the merits, (2) irreparable injury, (3) balance of equities, and (4) public interest). If *Younger* could apply to the third and fourth PI factors, as the district court posited, then *Younger* would effectively get double billing: It would apply to bar some plaintiffs under the AIA; then it would come back and apply *again* under *Winter*. That would make *Younger* a rule—not the exception—that would apply to everyone. *But see Meredith v. City of Winter Haven*, 320 U.S. 228, 235 (1943) (emphasizing that abstention is the exception not the rule).

Moreover, the Supreme Court has already rejected the idea that *Younger*'s federalism principles can apply without a pending state proceeding: The "principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'" *Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972)). So once we determine there is no pending state proceeding, *Younger* falls away—and that's that. It doesn't rise like a phoenix to apply again under *Winter* and Rule 65.

\*     \*     \*

The district court's decision creates a "squeeze play" for plaintiffs challenging plainly unconstitutional applications of state statutes. *Cf.* Owen M. Fiss, Dombrowski, Yale L.J. 1103, 1111 (1977). If *Younger* abstention applies because "state judicial proceedings have . . . commenced," *Hawaii*

No. 23-50541

*Hous. Auth.*, 467 U.S. at 239, then "federal intrusion into ongoing state criminal prosecutions" is "precluded," *Sprint Commc'ns Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). But when *Younger* abstention *does not* apply, plaintiffs are still out of luck because "the same values that underly *Younger*" will prevent a preliminary injunction against enforcement of a state statute anyway. *Evans*, 2023 WL 4879906, at *3. In essence, the balance of equities and the public interest preclude preliminary injunctions whenever the "values of comity and federalism" are implicated—which is *always* true when plaintiffs ask federal courts to enjoin the enforcement of state statutes. That effectively underrules *Mitchum*; it disallows § 1983 plaintiffs to seek injunctions against future proceedings that would violate the federal Constitution; and it rewrites the AIA into an exceptionless prohibition on the federal courts.

## III

Thus, we should've reversed the district court's erroneous invocation of *Younger*. Of course, that does not "mean that Evans is entitled to injunctive relief." *Ante*, at 6–7. Rather, I would remand for "consideration of the not-yet-evaluated preliminary injunction factors" by the district court "in the first instance." *Abbott v. Biden*, 70 F.4th 817, 846 (5th Cir. 2023) (citing *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *10 (5th Cir. 2022) (per curiam)); *see also Cutter v. Wilkinson*, 544 U.S. 709, 719 n.7 (2005) ("[W]e are a court of review, not of first view."). It is only because the majority considers the four PI factors anyway that I address them too. In my view, each favors Ms. Evans.

## A

Start with her likelihood of success on the merits. Texas law prohibits transmitting or promoting "a visual image of another in a bathroom or changing room" taken "without the other person's consent and with intent to invade the privacy of the other person." Tex. Penal Code § 21.15(b).

No. 23-50541

That prohibition "target[s] speech based on its communicative content," so it is "presumptively unconstitutional" unless it satisfies strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also Ex parte Metzger*, 610 S.W.3d 86, 95–97 (Tex. App.—San Antonio 2020) (holding § 21.15 is a content-based regulation of speech subject to strict scrutiny). I explain why (1) Evans' as-applied challenge is likely to succeed, and (2) why the majority errs in rejecting Evans' facial challenge.

1

This statute cannot be constitutionally applied to Evans. Undoubtedly, the State has a compelling interest in protecting Texans from Peeping Toms and voyeuristic creeps with cameras. And true, most nonconsensual photographs of people in bathrooms will involve "substantial privacy interests . . . being invaded in an essentially intolerable manner." *Snyder v. Phelps*, 562 U.S. 443, 459 (2011) (quotation omitted); *see also Metzger*, 610 S.W.3d at 105 (construing § 21.15 to "reach only invasions of substantial privacy interests that occur in an intolerable manner" (quotation omitted)).

But as applied to the picture at issue here, the statute unconstitutionally suppresses political speech. The subject of the photograph was a transgender activist and candidate for public office in Texas. Both Evans and the candidate were at the Capitol to attend a debate about S.B. 14—a bill designed to protect children from experimental medical procedures. In the photograph, the man is merely washing his hands at the sink, fully clothed and in full view of anyone inside the restroom. In the context of this public policy debate, the retweet of a photo depicting an activist and candidate using an opposite-sex restroom is "speech concerning public affairs," which "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S.

No. 23-50541

at 452 (quotations omitted). And as applied to Evans, § 21.15(b) criminalizes that core political speech, on the flimsy pretense of protecting privacy interests that are irrelevant where (as here) nothing remotely private is divulged in the photograph. In fact, the entirety of the incident—from the activist's presence in the opposite-sex bathroom, to the picture, to Evans's retweet of it—is a matter of public concern arising from a public debate about public policy in a public forum for lawmaking. Everything about it is the opposite of private. So as applied to the retweeted photograph, the statute fails to employ "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

In response, the majority reasons that the "statute's heightened intent requirement ensures that the statute is narrowly tailored to achieve [a] compelling interest" in privacy. *Ante*, at 10. The highest authority on Texas criminal law, the Texas Court of Criminal Appeals, has not yet interpreted the intent requirement. So, we do not know what the intent requirement will be. And that uncertainty exacerbates the constitutional problem by chilling speech by unsure would-be speakers. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("[W]here a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms." (quotation and citations omitted)).

But insofar as we have to guess, it should be obvious that DA Garza will not be able to prove that Evans had the "intent to invade the privacy of the other person." Tex. Penal Code § 21.15(b). It should be equally obvious that retweeting the image does not represent an "intolerable invasion" of the transgender activist's privacy. *Metzger*, 610 S.W.3d at 105. All of us use sinks in public buildings all the time—in airports, restaurants, sports stadiums, and other public accommodations. In Austin, the ever-progressive capital of Texas, the sinks in some restaurants and bars are not even in the bathrooms—they're in public, mixed-sex areas for all the world

to see. Is there a person on earth who thinks their conduct at a public sink enjoys privacy protections? If a woman confesses to her friend at the public sink that she has a gambling problem or wore blackface in college, is that conversation somehow privacy-protected? If a man discloses that he's carrying a handgun in violation of a bar's concealed-carry prohibition while washing his hands, is that act protected? What if a woman pulls marijuana from her purse and puts it on the sink? What other privacy interest could a person have when standing fully clothed at a public sink that they do not have when standing fully clothed in other parts of the public building? Does a transgender activist have some special privacy interest in using a sink that you and I do not have? If so, what legal basis is there for affording special super-privacy protections to transgender activists?

Thus, there is no way that DA Garza could prove that Evans had some specific intent to commit an intolerable invasion of anyone's privacy in retweeting a picture as part of a public policy debate. Still, an acquittal would do nothing to remedy or compensate for the significant chilling of speech Evans has suffered. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 203 (2010) (Alito J., concurring) (The possibility of prevailing in an as-applied challenge "becomes practically worthless if speakers cannot obtain the exemption quickly and well in advance of speaking."). Evans is therefore likely to succeed on the merits of her as-applied challenge.

2

On remand, Evans also may have a powerful overbreadth challenge. Section 21.15(b)(2) applies broadly to a "visual image of another in a bathroom or changing room." Will a substantial number of § 21.15(b)(2)'s applications concern photos like the one Evans retweeted, where the person depicted is fully dressed and merely washing his hands? Or where the person depicted is a public figure engaged in political advocacy in the People's

House? *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (asking whether "a substantial number of [a statute's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep" (quotation omitted)).

These should be questions for the district court on remand. But rather than remand, the majority speculates about likely applications of § 21.15(b)(2). It reasons that "constitutional [applications] readily come to mind." *Ante*, at 9. Such "circumstances" include capturing images of a person's intimate areas or images of celebrities who hide from "paparazzi or overzealous fans" in bathrooms. *Id.* at 9–10.

As an initial matter, the majority's invocation of "intimate areas" is a red herring. Section 21.15(b)*(1)* prohibits taking pictures of "intimate area[s]." So it is unclear how or why § 21.15(b)(2) could or should be read to duplicate that prohibition. *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019), *as revised* (Aug. 23, 2019) ("[W]e presume that choice of different text carries with it a choice of different meaning."). So really, the majority's speculations about constitutional applications of § 21.15(b)(2) boil down to celebrities fleeing paparazzi. And the majority offers no reason to think that celebrities—whatever that term means and whoever the majority thinks qualifies—have privacy interests that the rest of us don't. To the contrary, the entirety of the Supreme Court's privacy doctrine is premised on the idea that all Americans are created equal when it comes to our reasonable expectations of constitutional protection.

Even if the majority could imagine some constitutional applications of § 21.15(b)(2), that would be insufficient. For a First Amendment overbreadth challenge, the court "must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024). That is a famously

"fact-intensive" inquiry. *NetChoice, LLC v. Paxton*, 121 F.4th 494, 497 (5th Cir. 2024). And it is one that requires a remand to the district court to collect evidence, hear arguments, and assess the *actual* applications of a state law—not the ones that we can imagine by brainstorming with our law clerks. *See ibid.* It is therefore erroneous to adjudicate this case without the fact finding required by our precedent (and the Supreme Court's).

## B

Next, Evans has undoubtedly suffered an irreparable injury. While Garza decides whether to charge Evans, her First Amendment rights hang in "limbo." *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989). She must "self-censor" from further publishing the purportedly illegal photograph. *Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004). That "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quotation omitted). This should be an easy conclusion.

The majority acknowledges that "the threat of prosecution hangs over" Evans. *Ante*, at 8. But the majority discounts her injury because "it is not clear that she will be prosecuted." *Id.* at 7. That is not a mitigating fact. To the contrary, the District Attorney's indecision is the source of Evans' injury because it chills her from publishing the photograph in the future, while simultaneously denying her a clear adjudication of the impacted right.

The majority also notes that Evans sued "only forty-six days after the incident at the Capitol." *Ante*, at 7. That's true but irrelevant. If the majority's implication is that 46 days is too soon to tell whether the District Attorney will bring charges, then I point to the Catch-22 in its logic: If Evans had waited longer to find out whether criminal charges would be filed, she risked running headlong into *Younger*'s prohibition on enjoining *pending*

prosecutions. *See* Part II, *supra*. But if she self-censors for forty-six days and then files suit, that is an insufficiently lengthy chill of her First Amendment freedoms? "The loss of First Amendment freedoms" for *one* day is an irreparable injury. *Roman Cath. Diocese of Brooklyn*, 592 U.S. at 19 (quotation omitted). So the fact that Evans incurred forty-six of those injuries before filing suit is only proof that she has satisfied the second PI factor.

## C

Finally, take the balance of equities and the public interest, which "merge when the government opposes an injunction." *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 254 (5th Cir. 2024*)*. I have already noted the powerful First Amendment interests on Evans' side of the ledger. And "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quotation omitted).

Are there interests on the other side? The majority asserts that "Travis County has a strong interest in enforcing Texas's criminal statutes." *Ante*, at 7. But it offers no citation for that proposition. And one is hard to imagine. *The State* has an obvious interest in enforcing the statutes that its legislature enacts in its sovereign name. But *Travis County* did nothing to enact § 21.15(b)(2), and it is not obvious why the Travis County DA would care about enforcing a different government's statute. *Cf. Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir.) ("Texas district attorneys . . . are county officials, not state officials."). Of course, DA Garza has not actually brought a prosecution—he has merely *threatened* one—and the district court committed abject error in holding otherwise. *See Evans*, 2023 WL 4879906 at *3 (invoking "the balance of equities and public interest" before holding that "[f]orcing Garza to immediately halt a state criminal prosecution would plainly offend principles of federalism."). The

No. 23-50541

DA's years-long *threat* of prosecution—which he has held as a Damoclean sword over Evans's speech—is the sort of opportunistic, "crafty evasion[]" that equity does not protect. Henry E. Smith, *Equity as Meta-Law*, 130 Yale L.J. 1050, 1083 (2021) (quoting Joseph Story, Commentaries on Equity Jurisprudence: As Administered in England and America § 17, at 19 (Bos., Hilliard, Gray & Co. 1836)). And in any event, the ongoing and concrete chilling of Evans' speech easily outweighs the DA's interest in prosecuting one putative violation that, at absolute best, is on the farthest outer fringe of the statute's legitimate sweep. So the balance of equities and the public interest plainly favor Evans here.

\*      \*      \*

Free speech is a fragile thing. While prior generations observed despotic speech codes across an Iron Curtain, the modern free thinker needn't look so far or so far back. Take the United Kingdom today, for example. By one count, the birthplace of Bentham and Mill now arrests thirty citizens *a day* over offensive social media posts. *See* Charlie Parker, *Police make 30 arrests a day for offensive online messages*, The Times (April 4, 2025). And lest Uncle Sam look askance at John Bull, more than a few are clamoring for similar restrictions on this side of the pond, too. *See* S.B. 771, 2025 Cal. Assemb., (Cal. 2025) (providing for civil penalties "up to $1 million" for hosting so-called hate speech).

With free speech in a tenuous balance, courts do the agora no good by playing fast and loose with Fed Courts doctrines. The least we could do is remand Evans's case for the district court to weigh the preliminary injunction factors in the first instance. Because the majority instead denies relief and leaves Ms. Evans at the mercy of the Travis County District Attorney, I respectfully dissent.